AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

**FILED**
November 16, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: FM
DEPUTY

United States of America
v.
Martin UNZUETA-Mesta

*Defendant(s)*

Case No. **EP:26-M-05778-MAT**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 12, 2026 in the county of El Paso in the Western District of Texas, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 8:1324(a)(1)(A)(v)(I), (a)(1)(A)(i), and (a)(1)(B)(i) | knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with others known and unknown, to commit offenses against the United States, namely: knowing that a person is an alien, intentionally brought to and attempted to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry, regardless of whether such alien has received prior official authorization to come to, enter, and reside in the United States. |

This criminal complaint is based on these facts:

See attachment.

☑ Continued on the attached sheet.

Complaint sworn to telephonically on November 16, 2026 at 02:00 PM and signed electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

*Complainant's signature*

Erenda L. Newell-Luna, Border Patrol Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/16/2026

*Judge's signature*

City and state: El Paso, Texas

Miguel A. Torres, U.S. Magistrate Judge

*Printed name and title*

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

DEFENDANT: Martin UNZUETA-MESTA

PEPT# PEPT271100565

11/16/2026

FACTS (CONTINUED)

On November 8, 2026, a Border Patrol agent saw three individuals near the Rio Grande approximately 1.43 miles east of the Bridge of the Americas Port of Entry in El Paso, Texas, in the Western District of Texas. The individuals were setting up a ladder from the levee road to the international Border Fence. The Rio Grande marks the international boundary between the United States and Mexico. The agent alerted other agents and continued to monitor the group. When agents arrived, two individuals were already north of the international Border Fence and in the American Canal. Agents directed them to climb down or exit the canal. Agents identified themselves as Border Patrol Agents and questioned both subjects as to their citizenship and right to be in or remain legally in the United States. One of the individuals admitted he was a citizen of Mexico and had no immigration documents allowing him to enter or remain in the United States. Agents arrested him at approximately 1654 hours. The other two individuals also admitted they were citizens of other countries and had no immigration documents allowing them to enter or remain in the United States. Agents arrested them as well. After determining that all three had entered the United States by crossing the Rio Grande away from an official port of entry, agents identified them as illegal aliens and transported them to the El Paso Border Patrol Station.

At the station, agents interviewed one of the three illegal aliens after advising him of his rights. He said he was a Mexican citizen born in Oaxaca, Mexico, and had arranged to enter the United States illegally with help from someone he knew as “Primo Beto.” He said his total smuggling fee was $8,200. His sister had paid $3,000 for the initial crossing, and he was expected to pay another $4,000 in El Paso, Texas, and $1,200 in Albuquerque, New Mexico. He said his sister would send money to the smugglers for him. His account of the fee and payment arrangements was consistent with messages and financial transaction information agents later found on his phone.

At approximately 2240 hours, agents obtained written consent to examine the phone belonging to one of the three illegal aliens. The phone contained messages and financial information consistent with his statements. A WhatsApp message from a contact saved as “Primo Beto,” instructed him to deposit smuggling proceeds into several bank accounts, including one associated with Martin Unzueta-Mesta (hereinafter referred to as the DEFENDANT). A database check showed that the number used by “Primo Beto” was listed as the DEFENDANT’s home phone number.

Financial analysis showed that, through November 12, 2026, the DEFENDANT had received approximately $95,017 in wire transfers from multiple locations in the United States. Agents found that the transfers resembled payments collected for alien smuggling. The analysis also identified transfers from several individuals who were illegally present in the United States, including an individual who had received an order of deportation and was still in the United States. Records also showed that the DEFENDANT regularly entered the United States through ports of entry and held a B1/B2 Border Crossing Card.

On November 12, 2026, the DEFENDANT was referred to secondary inspection at the Paso Del Norte Port of Entry in El Paso, Texas, in the Western District of Texas. He had entered the inspection area using a valid B1/

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

DEFENDANT: Martin UNZUETA-MESTA

PEPT# PEPT271100565

11/16/2026

FACTS (CONTINUED)

B2 visa and had not yet been advised of his rights. At approximately 1305 hours, Border Patrol agents identified themselves and advised the DEFENDANT of his rights. The DEFENDANT acknowledged that he understood his rights, waived his right to legal representation, and agreed to answer questions. The DEFENDANT gave agents written consent to examine his three cellular phones.

During the interview, the DEFENDANT said he owned property in Ciudad Juárez, Mexico, that was being used to house individuals attempting to enter the United States illegally. He said he had rented the property to a person he knew as “Duck,” whom he believed was associated with the Línea or Empresa Cartel. The DEFENDANT said “Duck” stopped paying rent after the first six months but continued using the property to house illegal aliens. When questioned about receiving money for alien smuggling, the DEFENDANT initially denied receiving payment but later said he had received $1,027 for an individual who had recently crossed illegally into the United States. He said the payment was transferred to a bank card in his name. Agents observed that the account number involved in that transfer was also the account number the illegal alien had been instructed to use to send a payment. Agents also found the illegal alien’s phone number saved in the DEFENDANT’s phone. The DEFENDANT said he passed the smuggling-related payment to “Duck” and others, and that he feared what might happen if he did not cooperate with “Duck.” He said he had never reported threats or filed a complaint about them.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

Immigration History:
NONE.

Criminal History:
None.